or argument not to exceed 15 minutes per side. Peter Newberry, appellant. You may proceed. Good morning, Your Honors. Peter Newberry, representing myself. Thank you for taking time to hear us this morning. This is a case where I believe the district court did not fully understand the facts of the case. And the defendant was able to mischaracterize the case as a dental malpractice claim. It's your teeth we're talking about. Yes, sir, Your Honor. Representing yourself, you could practically just open your mouth and we could see some of the exhibits in the case. We could show you that, Your Honor. That's fine. All right. Essentially, Your Honor, this is a dental malpractice case dating back many years ago to a failed root canal procedure, which the patient was told was a successful root canal procedure. Had problems with the tooth. Subsequently, years after that, went back to the defendant. The defendant affirmed that, no, no, root canal procedure, fully satisfactory. There's no pain in your tooth from that nerve. The nerve has been completely removed. In fact, it's either from biting down hard or you may have some cancer. Took an x-ray, showed some funny stuff on the bone, and said, just let's keep monitoring this. And that monitoring went on for over 12 years after that time period. When the pain was not able to be kept under control, finally the patient went to an endodontist in Lexington, Kentucky, where it was found that the root canal had never been performed. There was an abscessed tooth for in excess of nearly 20 years. Kept under control by taking antibiotics for another reason. Well, no root canal was on it, just the full root wasn't removed, right? Correct, Your Honor. And the records, which were finally retrieved from the dentist, show that the root canal was not performed. He characterized it as difficult to get around a bend, so he didn't fully perform the root canal. However, in the subsequent visits to the doctor and phone calls between the doctor and the patient, both in Kentucky and Ohio, the dentist maintained that the root canal was fully performed, that the pain can only be coming from eating hard food or possibly cancer of the bone underneath it because there was absolutely no nerve left in that tooth, which was an absolute falsehood. And the dentist's own records and his own handwriting indicated such. But again, the patient was never informed of that. I know there's the issue about what law applies, but if you assume Ohio law applies for the fraud, and I'm looking at your complaint to see whether it meets the high requirements for pleading fraud, which presumably apply, right? Correct, Your Honor. Where do you even say that the defendant said something even false, much less fraudulent, in your complaint, which has to allege with specificity fraud, right? I'm looking at the complaint right now. Okay, well, he performed a root canal and charged me for the root canal procedure. Those facts are stated in the complaint, when in fact the root canal procedure was not performed. And that's fraud not to perform the root canal? What's the fraudulence? I thought the fraudulence was in stating that you might have cancer. That's what it says here. Well, no, no, that caused great emotional distress and was made to hide the fact of the negligent performance of the root canal. We have a negligent root canal being performed and a fraud simultaneously at the same time by charging me for the, charging the patient for the root canal and telling the patient. I mean, it has to allege it with specificity, right? I'm trying to see where it says that. I thought the allegation of fraud was more when you actually discovered many years later that it had not fully been performed, the root canal, and that he went twice to the dentist and he both times said, oh, it's something other than it had nothing to do with the root canal. That would also be the fraud, Your Honor. And that's just it. The district court characterized all that as dental treatment and therefore the statute repose dispose of my entire case. I understand that. I'm not asking you that question. I know what you're asking, Your Honor. Where you allege fraud with adequate specificity. And in paragraphs 31 to 34 of your complaint, maybe you don't have it right in front of you. I don't know. Hold up, Your Honor. You do? I do have my complaint. That's convenient. Thank you. Where is it? Don't you have to say he said this and knew it wasn't true and expected to get the following from it and that was his fraud? I mean, don't you have to allege something like that to allege fraud? You can't just say, oh, I was robbed. That's the whole specific. I mean, I haven't drafted these kind of complaints, so it's hard for me to speak, except that that's the standard we're supposed to apply, right? I state in the facts prior to the counts, Your Honor. Where are you now? The background of the case. Paragraph 4 talks about he performed a root canal for plaintiff. Paragraph 5? That's not fraud. Took his x-ray of the tooth and formed it either bitten down hard or had bruised a nerve or he had developed cancer. That would be fraud, Your Honor, because he knew that wasn't true. Does it say that? But you have to allege it. That's what the whole specificity point is. I didn't have the records to substantiate all that at the time, Your Honor, but my endodontist informed me that the root canal had not been performed. That's part of the whole point. We don't lightly allege fraud unless we have the facts to back it up. That's good you didn't allege it, but to that claim, you can't allege it. You have to specify it and you have to specify it because you've got some evidence to support it. On paragraph 7, I talk about the endodontist informing me that what my dentist informed me in paragraphs 4 and 5 was not accurate, was not true. I don't think a falsity proves fraud. You could have a negligent falsity. People make mistakes all the time. I think that covered it in the background when he informed me that it was from either this or that when, in fact, he knew it wasn't from either. I mean, if a dentist does not perform a root canal procedure... Judge Sutton is asking the same question I am. You agree that it doesn't say that he didn't know that? I'm sorry, Your Honor, what did you say, Judge Sutton? What was the question? It doesn't say that he knew it was false and said it anyway. It doesn't specifically... He says that he said it and it turned out to be false. It doesn't specifically say that it did, but paragraph 5 does say what Dr. Silverman told his patient in paragraph 7 demonstrate that that was false. It's from his own handwriting and his own records, so it's not a matter of misdiagnosis. It's a matter of... I don't know how you misdiagnose your own handwriting. You would agree, though, that if the complaint does not meet the specificity requirement, then it's properly disposed of? If it didn't meet the legal requirement, and that's... Yes, Your Honor, I have to agree with that. Okay, thank you. And again, Judge Beck, the district court's order dismissed on the basis that it was not an independent allegation of fraud or cause of action for fraud. It was all medical treatment. Do you have any particular case you rely on that you think most supports your position? That it survives the statute of repose? That it survives the statute of repose? Right. Well, and again, Your Honor, my case wasn't pled as that necessarily, but the district court ruled that the entire thing was a continuation of a dental treatment. Oh, I understand. And so what is your best case to show that the district court erred? Well, then I fall within the statute of repose, Your Honor, because that dental treatment continued within four years of me filing the lawsuit. The district court's order would put me within the statute of repose on their reasoning that it's dental treatment. Again, I allege that it was fraud, all the statements to me, to keep me from finding out about the initial fraud and to keep me from finding out about the initial root canal procedure that failed, the only dental treatment that I received. But according to the district court, it was all dental treatment. And if it was all dental treatment, then I fall within the 40 statute of repose because I filed suit within four years of the last treatment, according to the district court, if that makes any sense, Your Honor. I understand what you're saying. And again, we didn't necessarily plead it as that. We pleaded it as dental malpractice when the initial root canal wasn't done and also fraud at the same time because they charged and said they did something they didn't. Subsequently, over the years, both in Ohio and Kentucky, phone calls placed by the doctor to the patient in Kentucky, up until just recently, assuring him that, no, no, no, you have no nerve there. We alleged, and again, maybe now the specificity is we needed to do, that that was a continuous fraud trying to keep me from filing suit and discovering the malpractice and fraud or the malpractice in the four-year statute. The district court ruled I have no independent action for fraud because that was all dental treatment. Now, if that was all dental treatment, then the statute of repose doesn't come into play because that treatment occurred within four years of me filing the lawsuit. Thank you. Your Honor, may it please the court, my name is Mike Mahan, and I represent the appellees in this action, Mark Silverman and Silverman Dental. We ask this court to affirm the district court's dismissal of plaintiff's complaint in its entirety. The district court properly applied Ohio law because the transfer of this case from the District of Court of Kentucky to Ohio was pursuant to 28 U.S.C. 1406, which- How do we know that? Because the district court's transfer, Judge Bertelsman's order, specifically states in there that the case was transferred due to his grave doubt that the defendants, the appellants or appellees, were subject to personal jurisdiction in the state of Kentucky. What does grave doubt mean? That he has a lot of doubt. Yeah, but it's not a finding of lack of- Well, I would say that it is a finding. He says in there, we filed at that point in time a motion to dismiss for lack of personal jurisdiction once the case was removed to the District Court of Kentucky. The first thing that Judge Bertelsman states in his transfer order is that he has grave doubts that the defendants are subject to personal jurisdiction in Kentucky. He then goes on to state that says- Maybe the grave doubt translates into this is complicated and I'm going to do this for convenience. It's another alternative. Why not make him make the finding? Well, it would have been nice for him to be more specific at that time, but if you actually look to- I mean, the question for the District Court of Kentucky at that time was, are defendants subject to personal jurisdiction in Kentucky? And if you look to the case law in Kentucky of whether medical treatment that occurs in Ohio- I mean, here we have an Ohio dentist, Ohio dental practice. All the treatment that existed in this case all occurred in Ohio. And because of that, the defendants are actually not subject to personal jurisdiction in Kentucky courts. And the case law supports that, which we cited in our motion to dismiss for lack of personal jurisdiction, Kennedy v. Zeisman and Jackson v. Weilman. And Kennedy was actually a case that was decided by Judge Bertelsman, who transferred this case over. This says, an Ohio physician treating a Kentucky patient is not subject to personal jurisdiction in Kentucky because there would be no benefit to the citizens of Kentucky in subjecting to the jurisdiction of its courts a non-resident physician whose contacts arose merely from treating Kentucky patients. In fact, in this case, actually the plaintiff was an Ohio resident at the time the treatment started. He later moved to Kentucky but continued to travel to Ohio to receive treatment. For that reason, in actuality, the Sixth Circuit says when you can't- sometimes it's hard to tell in the transfer orders why a case was specifically transferred. And Judge Sutton, taking your point that the grave doubt, what does that exactly mean? The Sixth Circuit in Martin v. Stokes said that you must- the court must focus on the nature and the purpose of the transfer. Kind of look past the words, necessarily, because sometimes it's not always easy to tell. And in looking past the words of grave doubt- I mean, in my position, the grave doubt is quite clear that personal jurisdiction did not exist. But even looking past that and looking to how it even got there, we filed a motion to dismiss for lack of personal jurisdiction, not for lack of convenience or anything like that. The court then transferred the case to Ohio. I mean, we're looking at a case that was in Covington versus in Cincinnati. There couldn't have been a whole lot of convenience there changing from making anybody, any witness, go simply across the river. And so why was it transferred then? Looking to the district court's order in Kentucky, it had to have been transferred for lack of personal jurisdiction. And, in fact, defendants, based on the case law, were not subject to personal jurisdiction in Kentucky. Let me ask you, how do you respond to Mr. Newberry's point that, hey, if all this was treatment, then he was treated within four years of filing suit. So why would the statute of repose apply? I'm glad you brought that up because he makes that point now. But if you look to the four corners of the complaint, there are alleged three different visits. We have a visit in the early to mid-1990s that the actual root canal took place. Then we have the quote about 10 years later that he says in paragraph 5, plaintiff returned to defendant, to Dr. Silverman, to complaining of pain in his tooth. At that point in time, Dr. Silverman took the X-ray, and that's when he diagnosed him with either a bruised nerve or potentially cancer. 10 years from early to mid-1990s gets us to early to mid-2000s. That's when the diagnosis, the treatment, occurs. He goes back to him a few years later. So we're at early to mid-2000s. Now, a few years later, from early to mid-2000, puts us into mid to late-2000. Now, again, at the second treatment, so there were three visits. I didn't follow the numbers there. I have to be vague because that's what the complaint is. You said a few years later equals a few months later. I apologize if I said that. We have the first visit early to mid-1990s. 1990s? 1990s, yes. I'm not hearing the S. Sorry. Then approximately 10 years later from that visit, that puts us into early to mid-2000s. Thousands? Right. You mean 2000 to 2010? Well, early to mid-2000s would be. . . Might be 2000 to 2040. I don't know. I mean early to mid-2000s? He means 2001, 2004. Well, he says 10 years later after. . . Early to mid-first decade of the. . . Correct, yes, correct. Then we have a few years after that. Might get you up to 2008, 2009 is what you're saying. Correct. If we look at the three visits, the first visit was the procedure. The second visit was the diagnosis. The third visit was a repeat of the second visit. He says diagnosis. The treatment occurred. I'm sorry? What year did he bring suit? The complaint was filed in 2012, I believe. So you go back four years from that then, right? No, you're going back four years. . . Yeah, correct. But you're going back. . . Three years after the mid part of the first decade of 2000 then, right? But I think we're focusing on the wrong thing. So the treatment. . . There are three visits that he alleges in his complaint. The first is the treatment in 1990. The second one is the diagnosis. The third one is simply restating the diagnosis. He doesn't do any more treatment on that third visit, according to the complaint. He didn't do any treatment on the second visit, except take an X-ray. No, he does do treatment, so it's a diagnosis. Under Ohio law, under the broad statutory framework of 2305.113, a dental claim is defined as any claim that's asserted against a dentist that arises out of a dental procedure, dental diagnosis, and treatment or care. So the diagnosis is really what we're talking about here. There was a second diagnosis in the late 2005 to 2010 range. Well, there wasn't a second diagnosis. It was the same. . . A repeat of the first diagnosis. The first diagnosis. So the actual treatment that occurred, the diagnosis, was in the early 2000s, early to mid-2000s, according. . . Why in the second visit a diagnosis, the third visit, let's say? Why is that not still a diagnosis, even if it was the same thing that, well, it's not the root canal, it's something else that's causing your pain? Well, this would be the first of all. . . Your Honor, this is the first time this has been argued. This is not argued at all in any of the appellant's briefs. But, in fact, the plaintiff is intentionally vague here simply to try to get around these limitations. The treatment actually was before, even if we were to take your position there, the treatment was actually before four years, before 2012, in November 2012 when the complaint was filed. And it's actually. . . I'm taking it back. The complaint was filed in November 2013. The treatment that he went to the end. . . The treatment he went to the endodontist was 2012. He then filed it one year from that point, which was November of 2013. So I misspoke there. The treatment. . . That's from the complaint, right? The what? The four years goes back from when the complaint is filed. Correct, yes. The complaint filed? November of 2013. So we go back to November of 2009 and see if anything happened after that. Correct. You're talking about dental treatment. Yes, Your Honor, correct. Yes. And based on the actual allegations in the complaint, we have nothing happens after November 2009. Even the repetition of the previous diagnosis did not occur after that? No, it did not. He does not allege that in the complaint. He does not argue that in his briefs. Well, he argues something like it in his brief because he makes this argument that you can't have it both ways, and he's referring to the same kind of. . . Your client's records would reflect the precise dates of each visit, wouldn't they? Doesn't it? I mean, when in the 1990s the actual root canal was done, when roughly ten years later he comes back and gets the first diagnosis, and when he comes back several years later he gets the second diagnosis. Don't you know those dates? Well, yes, Your Honor, and they're before. . . I mean, they're not in the record, but they're before four years prior to the filing of the complaint. We have to go based on what's alleged in the complaint, and the plaintiff is intentionally vague here because he knows that that's why he actually filed in Kentucky, knowing that the statute of repose applies in Ohio. But, yes, the records show that everything occurred over four years prior to the filing. Okay, so he might be. . . He would presumably be in trouble then if it's a malpractice claim. The statute of repose probably gets him. But then he's alleging, all right, but one of his claims is fraud. Correct. And there's this case of, what, Gaines versus preterm Cleveland, I think. Yes, and as Your Honor, you mentioned earlier that, and it's an exact point that we point out in our brief, that it's not like the root canal was not performed in this case. In Gaines, the court allowed a fraud claim to exist separate from the malpractice claim because the doctor said, I did something, when in fact he did not do it at all. He didn't remove the IUD. Correct, correct. And since Gaines, so Gaines was in 1987, and so we're looking to what's happened since Gaines in the Ohio courts. There has not been, that I've been able to find, and the appellant does not point to, a case where a court allowed a malpractice claim and a fraud claim to exist against the same doctor that actually performed a procedure. So Gaines allows it against the same doctor, but the doctor did not perform the procedure. But since Gaines, never been allowed, there's not one case that I was able to find, and again plaintiff does not point to it, that allows a fraud claim to exist against the same doctor who performs some type of medical treatment. In this case, we have the performance of some type of medical treatment. We have a root canal. It's not as if, as you pointed out, the root canal was not performed. The way this case would be like Gaines would be if plaintiff came to Dr. Silverman, and says, I want a root canal, or we talked about a root canal. Dr. Silverman puts plaintiff under for an hour or two hours, however long a root canal takes, and then sits in his desk and basically does nothing for those two hours. Plaintiff wakes up and says, ah, I performed the root canal, when in fact he had not done it. That would be a clear case of fraud, right? But I thought the complaint alleged from, quote from Gaines is, a knowing misrepresentation of a material fact concerning a patient's condition. Sustained a fraud claim independent of a dental malpractice. Correct, and that is what Gaines says, but if you look to how the courts have interpreted Gaines since then, and the Supreme Court has not taken up another one since then, so every case, and I've cited many in my brief, but for example, the first district court in Hensley v. Durrani, they make a distinction there in Gaines where it's separate, only where the decision to misstate the facts cannot be characterized as medical in nature. And here, the misstatement of the facts, so to speak, is the diagnosis. I mean, if you look to a plaintiff's complaint, he says the statement that the fraud claim is based on, assuming we have met the particularity requirement as pointed out, is that the plaintiff goes to Dr. Silverman and says, I have a problem with my tooth. Dr. Silverman takes an x-ray, looks at the x-ray, and says, you either have a bruised nerve or you're diagnosed with cancer. So you bit down too hard. Correct, you bit down too hard. And first of all, we have to assume that telling— Just as a footnote, when did he do this, what you just said he did? That would have occurred in early to mid-2000s. Early to mid-2000s, meaning 2000 to 2005. Correct. Actually, I mean early to mid-2000s based on the language would be, in my interpretation, 2000 to 2005. Maybe, you know. All right. But at that point in time, back to your point, is Ohio Revised Code 2305.113 defines a dental claim very broadly. It says, includes within that dental claim a diagnosis, a dental diagnosis. Here we have a doctor who looked at an x-ray and said, you either have a bruised nerve or you have cancer. We have to first assume that the statement of telling a patient he has cancer is an attempt to cover up malpractice, which seems to me quite absurd on his face. But even assuming that's true, we have a diagnosis. And 2305.113 says a diagnosis is a medical claim. As the court said in Hensley, the fraud claim is only separate when the decision to make the statement is not medical in nature. Here, it's a diagnosis. It is medical in nature. In no case since Gaines has ever allowed a claim of fraud to exist against the doctor along with a dental claim or a malpractice claim. Do you argue in the alternative that there's not a sufficiently specific allegation of fraud in the complaint? That was not argued, no, Your Honor. So you don't make that argument? I do not make that argument, but I agree with what you were saying earlier. We can or can't rely on it if you don't make that argument? Well, I believe you can rely on it because it comes to the same conclusion. So you'd be affirming on an alternative grant? Correct, yes, Your Honor. And so I want to point to, I mean. Your theory is even when you have a knowing falsity and it relates to a diagnosis, you can't bring a fraud claim? Well, the way you make that point, I mean, Gaines would affirm your position that there are some cases, a limited circumstance when you have a knowing falsity. But when you have the knowing falsity and the person is making a diagnosis, I mean, it's essentially an incorrect diagnosis. You cannot have a fraud claim separate from a malpractice claim. But, I mean, you say he said here you have cancer. What if he just knew 100 percent? That's the allegation. You claimed one option is cancer, but you knew 100 percent that was not true, and for whatever motive you said it anyway. So it's a knowing falsity as to this diagnosis option. How is that not fraud? Well, it's not fraud because it is related, intertwined with a diagnosis. It doesn't make any sense to me. I know you keep saying there are no cases. Well, I'll bet you anything there will be one before long because that just doesn't make any sense. But if you look at the actual statement here, it doesn't say you have cancer. It says you may have cancer. No, I'm asking a hypothetical because I'm challenging your diagnosis theory that there's this void in cases where the knowing falsity relates to a diagnosis, and I'm just saying it just doesn't make sense. Well, I mean, to your point where if the doctor absolutely knows that the person does not have cancer and he says it as a way to, I guess, cover up something. Motive is not part of fraud. It doesn't have to be part of fraud. Well, actually, it does under Ohio law. You have to do something for personal gain. Okay. Well, the personal gain is to mislead. It could be all kinds of things. Well, if so, your personal gain, if you can establish all the other elements with your hypothetical, then potentially at that point in time, not knowing all the rest of the circumstances behind it, you may be able to get to, you're at least closer to the gains level. I mean, gains is setting forth where you have a procedure that didn't occur and you have an allegation or the doctor says it did occur. I mean, that's pretty clear that's fraud. When we're getting farther to the grayer areas, you know, I can see a circumstance where if a doctor does say you have cancer and he knows specifically that you don't have cancer, maybe that potentially could be a fraudulent statement. But there's been no case that even I would argue at that point in time, or as it relates to this case, is that's not what we have here. We have a doctor who says, I'm looking at your x-rays and you may have cancer or you may have been down. How can we reverse the district court? It's not so much affirming an alternative ground. It's a ground not argued. How can we say the district court was wrong or, well, this would be affirming, I guess, but I just don't understand how we can do it when you don't raise it. I mean, if they had not raised an argument, you would claim forfeiture, wouldn't you? But if we had not raised an argument that they're alleging should reverse the district court and they're not appealing it on those grounds. That's not how forfeiture works. There's no forfeiture exception where it leads to an affirmance. So appellees, forfeiture law doesn't apply to appellees, but it applies to appellants. That's what you seem to be suggesting. That's just not true. Forfeiture law applies to everybody, and if you don't raise it, you better have a really darn good reason for our reaching out to decide it. My position is you don't have to actually find or affirm the district court on those grounds. You can affirm them on the same grounds that the district court held, which is the fraud claim is. . . The premise of my question is I'm not sure I agree with that point. I'm sorry? The premise of my question is I'm not sure I agree with your assessment of Ohio law on fraud, and I'm just saying it seems like the particularity argument was not raised by you in your brief. It doesn't mean you can't raise it below on remand if the fraud claim is remanded, but it doesn't seem fair to let you get away with not having raised the argument and still winning on it. But that's certainly true that we can raise it on remand. And, Your Honor, I see that I'm out of time, but I would. . . You've answered my question, so thank you. Thank you. I do, Your Honor. Thank you. And I will raise the issue of forfeiture for the record. Defendant's counsel made a lot about my complaint and how brief it was. He neglected to inform you. There is a 10-page affidavit of record before you, highly detailed. Is that your lack of specificity? Well, it may. . . Absolutely, Your Honor. And it also details precisely paragraph 6 and 7 detail. Up until 2012, my treatment with Dr. Silverman. I saw Dr. Silverman twice a year for almost 30 years. I raised this issue with him every time after the initial x-ray. He took x-rays twice. And you asked counsel about the dates, and he wasn't able to tell you, even though he said he did know. In fact, I purport to you he does not know, because other than the initial root canal treatment, and I was being treated for an abscessed tooth. I wasn't being treated for root canal. It was an abscessed tooth which wasn't treated, and it was told it was successfully treated. Other than that record for 231, there are absolutely no records for 231, none. Yet records for every other tooth and every other visit for almost a 30-year period were produced. What's 231? 231 is the subject tooth, the tooth that was abscessed with the root canal and now those never performed, Your Honor. So there are no records. I received no records whatsoever before I filed suit. Immediately the day after I went to my endodontist in Lexington and found out what had happened that I had been lied to, I immediately requested my records. And I detail all this in my affidavit. I first told them I couldn't get them, and then it took over six weeks for me to get my records after Dr. Silverman personally reviewed them. And then I was told, and the district court is also wrong. The district court says there's something about not having the records told by an unknown person. It's detailed. The office manager, Chrissy, and Dr. Silverman both personally told me the records were destroyed and or altered. Not altered, but they're no longer available. They're missing. They're destroyed. And we go back to the district court's reasoning that this is all medical malpractice and therefore there's no independent thing for a tort because it's all treatment. Gaines says the alleged fraud had nothing to do with treating a pellant, rather the alleged fraud relating to protecting the doctor. And that's all that was done here. When Dr. Silverman took an X-ray of the abscessed tooth back in the 90s and solved his abscess and performed his root canal procedure and took nine additional X-rays during the procedure. I was wide awake during the procedure. Nine X-rays, none of them had been produced. That X-ray would show, and then he writes in his log, and when he wrote in his log, we don't know, but it's the only record of tooth 31 that was produced. He writes it was an incomplete procedure because of a curvature in the tooth. Now, and he told me personally over all the years that he personally reviewed all the records, his initial records, and the two X-rays he subsequently took, every time I came in and complained about the tooth, it would be impossible to misdiagnose the tooth if he has his own handwritten note saying it wasn't complete. He has X-rays showing it's not complete, but yet he told me it was incomplete. So is it dental treatment? How can it be a misdiagnosis when you know for a fact in your own handwriting the procedure was never performed and you still have an abscessed tooth? Anyway. You know, I'm just rereading Judge Beckwith's decision. It's true she doesn't talk about particularity in one sense, but another way you could look at this case is that's why she comes to this outcome because you don't have the particular allegations you would normally have with fraud. Well, the FDA was filed a record at that time. Well, we'll read it. I mean, maybe it has the things, but when you read her opinion, it's true. It's not a particularity opinion per se, but she is saying things that is suggesting, well, you don't have these types of allegations of fraud independent of a traditional diagnosis. So they kind of come to the same place. Well, how can a medical practitioner make a diagnosis? And again, I go back to the language of gains. The alleged fraud had nothing to do with treating me. It had to do with covering up a malpractice. It had to do with covering up an initial fraud. When you're stating something that you know is not true, how can that be treatment for the patient? To answer a civil procedure question for me, if you don't adequately allege fraud, can you later submit an affidavit that alleges fraud but it isn't a change to the complaint? Is that sufficient under the civil procedure law or is it not? That I do not know, Your Honor. But the record before the court at the time of the decision, it was a record. These are unrefuted allegations. Dr. Silverman has not refuted any of these allegations, nor has he refuted or denied anything in the complaint. That's a civil procedure question. Thank you. Thank you, Your Honor. Further questions?  The court will be in five minutes' recess.